**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|   |   |
|---|---|
| DENT-A-MED, INC., d/b/a HC PROCESSING CENTER, | |
| Plaintiff, | |
| v. | Case No 04 C 4780 |
| LIFETIME SMILES, P.C., formerly known as WHITE OAK DENTAL, P.C., an Illinois corporation; DW MANAGEMENT COMPANY, formerly known as LIFETIME SMILES, INC., an Illinois corporation; FRED S. WEINER, DAISY WEINER, JOY A. TEXTER, and SUSAN YANOWSKY, | Hon. Harry D. Leinenweber |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Presently before the Court is a Motion for Summary Judgment filed by Defendants Daisy Weiner (hereinafter, "Ms. Weiner"), Lifetime Smiles P.C. (hereinafter, "Lifetime Smiles"), and DW Management Company (hereinafter, "DW Management") (collectively, the "Defendants"), with regards to all remaining counts brought against them by Plaintiff Dent-A-Med, Inc. (hereinafter, "Dent-A-Med") in its Third Amended Complaint. The Motion argues that the Court should apply the doctrine of collateral estoppel based on the judgment in a corollary bankruptcy case, *In re Fred Weiner (Dent-A-Med, Inc. v. Fred S. Weiner)*, No. 06 A 688, 2008

WL 2699914 (Bkrtcy.N.D.Ill., July 3, 2008). Specifically, Defendants seek a Summary Judgment ruling on the claims for common law fraud (Count I) and statutory fraud under the Illinois Consumer Fraud and Deceptive Practices Act (the "ICFDPA") (Count II), brought against all three Defendants (Ms. Weiner on an alter ego theory). Defendants also move for Summary Judgment on the claims for breach of contract (Count III) and conversion (Count IV), brought against all three Defendants (Ms. Weiner individually). For the reasons stated herein, the Motion is **GRANTED IN PART** and **DENIED IN PART**.

## I. BACKGROUND

### A. Facts

Dent-A-Med is a company that provides financing to patients undergoing dental procedures. Defendant Fred Weiner ("Dr. Weiner") practiced dentistry under the corporate entity, White Oak Dental, P.C. ("White Oak"), which changed names to Lifetime Smiles, P.C. in 2003. Dr. Weiner was the sole shareholder and director of this entity. Lifetime Smiles, Inc., which changed names to DW Management, was the entity responsible for the management operations of White Oak. Ms. Weiner was the sole shareholder and director of this entity.

On December 20, 2002, Dent-A-Med and White Oak (doing business as Lifetime Smiles) entered into a Provider Agreement.

*See* Defs.' Ex. A.  Ms. Weiner signed the Provider Agreement on behalf of Lifetime Smiles.  In the Provider Agreement (the "Agreement"), Lifetime Smiles agreed to submit charge slips to Dent-A-Med for payment for dental goods and services.  On its face, the Agreement does not indicate a prohibition against the practice of billing before goods or services are provided ("pre-billing"), and the Court is aware of no written policy prohibiting pre-billing prior to January 2004.

In the course of its business relationship with Dent-A-Med, Lifetime Smiles pre-billed some services.  As evidenced by a telephone call between Ms. Weiner and a Dent-A-Med employee, Dent-A-Med knew that Lifetime Smiles submitted charge-slips for pre-billed goods and/or services, and it accepted the practice of pre-billing.  On January 6, 2004, Dent-A-Med informed Lifetime Smiles that it would no longer accept pre-billing.

On July 21, 2004, Dent-A-Med filed suit against Lifetime Smiles, DW Management, Ms. Weiner, Dr. Weiner, and other individual defendants, alleging common law and statutory fraud, breach of contract, and conversion.  The fraud claims in the Third Amended Complaint are based on the allegation that Defendants submitted charge slips for work not completed, work done improperly, and/or work performed by non-licensed employees.  The contractual claim alleges that Defendants are obligated to

reimburse Dent-A-Med for funds not paid by and/or credited to patients by Dent-A-Med pursuant to the Provider Agreement.

### B. *Dent-A-Med, Inc. v. Fred S. Weiner*

In October 2005, Dr. Weiner filed a voluntary Chapter 7 bankruptcy case. Dent-A-Med then filed an adversary complaint against Dr. Weiner pursuant to 11 U.S.C. § 523(a)(2)(A), which provides that a Chapter 7 Discharge does not discharge an individual debtor from any debt obtained by "false pretenses, a false representation, or actual fraud." *In re Fred Weiner*, 2008 WL 2699914 at *5. The case was tried on September 26 and 27, 2007, and April 17, 2008, before Judge Pamela S. Hollis, who entered judgment in favor of Dr. Weiner on July 3, 2008. *Id.*

In her Opinion, Judge Hollis held that "Dent-A-Med failed to establish fraud or misrepresentation perpetrated specifically against it by Weiner" under 11 U.S.C. § 523(a)(2)(A). *Id.* at *2. According to Judge Hollis, Dent-A-Med "essentially alleg[ed] the same facts" as those in this case, namely that "Weiner billed for partially complete work and Weiner's work was negligently or improperly performed by unlicensed employees of Weiner's companies." *Id.* Judge Hollis determined that pre-billing was "a routine practice" known to Dent-A-Med and that Dent-A-Med failed to establish that it prohibited pre-billing during the relevant time period. *Id.* at *5. Dent-A-Med also failed to show evidence

- 4 -

of charge slips for work completed improperly. *Id.* at *7. Judge Hollis concluded that "the debt at issue was not caused by fraud perpetuated by Weiner" but instead "arose out of the routinely accepted pre-billing practice between Lifetime Smiles and Dent-A-Med in their course of business under the Provider Agreement." *Id.* Finally, because Dent-A-Med failed to establish fraud, Judge Hollis found it "unnecessary to even consider" alter ego allegations against Dr. Weiner. *Id.* at *2, *7. She noted, however, that Dent-A-Med "may have a right to reimbursement" under a breach of contract claim, but she could "not transform total potential contract damages into total fraud damages." *Id.* at *2, *5 (noting that the Provider Agreement preamble is vague).

## C. Current Motion for Summary Judgment

Defendants now contend that the doctrine of collateral estoppel entitles Ms. Weiner, Lifetime Smiles, and DW Management to summary judgment. Defendants argue that, in the bankruptcy proceeding, Dent-A-Med litigated identical facts to those alleged in this action, and that Judge Hollis' findings of facts were essential to her final judgment in favor of Dr. Weiner. With respect to Counts I and II, Defendants claim that Dent-A-Med is precluded from alleging that Defendants committed fraud by submitting charge slips for pre-billed work or work done improperly. With respect to Counts III and IV, Defendants argue that Dent-A-Med is precluded from claiming that Ms. Weiner was a

party to the Party Agreement and from asserting the breach of contract and conversion claims against the corporate Defendants.

In response, Dent-A-Med argues that the bankruptcy case against Dr. Weiner does not preclude any of its claims against Defendants. Dent-A-Med contends that collateral estoppel is inappropriate because, in the bankruptcy action: (1) findings were made specifically as to Dr. Weiner; (2) Defendants were not parties; (3) Judge Hollis only decided the issue of dischargeability of Dr. Weiner's debt to Dent-A-Med pursuant to 11 U.S.C. § 523(a)(2)(A); and (4) Judge Hollis' Findings of Facts were neither litigated nor essential to the judgment.

## II. **STANDARD OF REVIEW**

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A fact is material if it could affect the outcome of the suit under the governing law, and a dispute is genuine where the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must view all the evidence and any reasonable inferences therefrom in the light most favorable to the nonmoving party. *See Miller v. American Family Mut. Ins.*

*Co.*, 203 F.3d 997, 1003 (7th Cir., 2000). The adverse party, however, may not rest upon the mere allegations or denials in the pleadings, but "must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." FED. R. CIV. P. 56(e).

### III. <u>DISCUSSION</u>

#### A. Collateral Estoppel

The law is clear that collateral estoppel ("issue preclusion") applies to bankruptcy decisions and prevents litigants from relitigating issues already resolved in an earlier proceeding. *Innkeepers' Telemanagement & Equipment Corp. v. Hummert Management Group, Inc.*, 841 F.Supp. 241, 246 (N.D.Ill., 1993). A party seeking to invoke preclusion must show four things: (1) the issue sought to be precluded is the same as that involved in the prior action; (2) the issue was actually litigated; (3) the determination of the issue was essential to the final judgment; and (4) the party against whom estoppel is invoked was represented in the prior action. *Adair v. Sherman*, 230 F.3d 890, 893 (7th Cir., 2000); *Klingman v. Levinson*, 831 F.2d 1292, 1295 (7th Cir., 1987). Because issue preclusion is an affirmative defense, Defendants have the burden to set forth facts to satisfy each element. *Adair*, 230 F.3d at 894. In

determining whether Defendants have met their burden, the Court may consult substantive principles of law in order to determine the scope of the earlier judgment or the parties bound by the decision. *Id.*

As a preliminary matter, the Court rejects the argument that collateral estoppel should not be applied merely because Defendants were not parties to the bankruptcy case. Collateral estoppel may be applied "even where the party asserting estoppel was not a party to the previous action, as long as the party to be estopped was a party in that action." *Innkeepers' Telemanagement*, 841 F.Supp. at 246. However, the doctrine of collateral estoppel "treats as final only those questions actually and necessarily decided in a prior suit." *Klingman*, 831 F.2d 1294. Whether the issues in this case and the issues in the prior action are identical is a question of law. *Adair*, 230 F.3d at 893. Consequently, the Court begins by examining Judge Hollis' Opinion in order to ascertain its nature and scope. The Court also must determine whether Judge Hollis actually and necessarily decided any issue that would preclude Dent-A-Med's claims in the current action. *Id.*

**B. Common Law and Statutory Fraud Claims**

Defendants first argue that Dent-A-Med is precluded from alleging that Lifetime Smiles, DW Management, and Ms. Weiner (on

an alter ego theory) committed fraud by submitting charge slips for pre-billed work or work negligently or improperly performed. In response, Dent-A-Med contends that the issue of Defendants' fraud was not decided in the prior case, and any findings of fact were neither litigated nor essential to the judgment in favor of Dr. Weiner. The Court now turns to the specific issues to determine whether they are identical for purposes of collateral estoppel.

In the bankruptcy proceeding, Dent-A-Med alleged that, from December 2002 through April 2004, Dr. Weiner and his employees and agents submitted fraudulent charge slips on behalf of Lifetime Smiles to Dent-A-Med for dental services that were never provided, partially complete, completed in a defective manner, or provided by unlicensed individuals. Dent-A-Med alleged that it reasonably and justifiably relied upon deceptive or false representations of Dr. Weiner and his employees and agents, and but for those representations, it would not have paid funds on behalf of the patients. *See* First Am. Compl. to Determine Dischargeability ¶¶ 39-51. Dent-A-Med asserted these claims against Dr. Weiner pursuant to 11 U.S.C. § 523(a), which required it to establish false pretenses, false representation, or actual fraud. *In re Fred Weiner*, 2008 WL 2699914, at *4-5.

First, Judge Hollis determined that Dent-A-Med failed to establish false pretenses or false representations. Under

Section 523(a)(2)(A), Dent-A-Med was required to show that Dr. Weiner made a false representation of fact, which he knew to be false or made with reckless disregard for its truth and made with an intent to deceive, and that Dent-A-Med justifiably relied on the false representation. *Id.* Judge Hollis rejected the argument that pre-billed charge slips were false representations because Dent-A-Med failed to show that it prohibited pre-billing during the relevant time period. Rather, the evidence showed that pre-billing was "a routine practice known to Dent-A-Med." *Id.* Moreover, Dent-A-Med offered no evidence that Dr. Weiner or his affiliated companies submitted charge slips for substandard goods or services or provided services by unlicensed individuals. *Id.* at \*7.

Judge Hollis next held that Dent-A-Med did not establish actual fraud under Section 523(a)(2)(A), which required Dent-A-Med to show that a fraud occurred, that Dr. Weiner had the intent to defraud, and that the fraud created the debt at issue in the discharge dispute. *Id.* at \*6. Judge Hollis found that Dent-A-Med failed to prove that Dr. Weiner, Lifetime Smiles, or affiliated offices intended never to complete the pre-billed charge slips. Judge Hollis determined that the debt at issue was not caused by fraud but instead "arose out of routinely accepted pre-billing practice between Lifetime Smiles and Dent-A-Med in their course of business under the Provider Agreement." *Id.*

In the present case, Dent-A-Med makes almost identical allegations in Count I (common law fraud) and Count II (statutory fraud) against Defendants. *See* Compl. ¶¶ 38-57. These claims are based on the same set of facts, namely that, from December 2002 through April 2004, Defendants submitted charge slips to Dent-A-Med for services which Defendants knew were not provided, provided in a substandard manner, or provided by unlicensed employees. *See id.* ¶ 4. As in its bankruptcy complaint, Dent-A-Med claims to have "reasonably relied upon the representations . . . , and but for those representations, would have paid no funds. . . ." *See id.* ¶ 48.

In order to establish common law fraud, Dent-A-Med must show the following: (1) Defendants made a false statement of material fact; (2) Defendants knew the statement was false; (3) Defendants intended for the false statement to induce Dent-A-Med to act; (4) Dent-A-Med relied on the truth of the statement; and (5) Dent-A-Med suffered damages as a result of its reliance. *Geschke v. Air Force Ass'n*, 425 F.3d 337, 345 (7th Cir., 2005). Similarly, under the ICFDPA, Dent-A-Med must establish: (1) Defendants' deceptive act or practice; (2) Defendants' intent that Dent-A-Med rely on the deception; (3) the deception occurred in the course of conduct involving trade or commerce; and (4) Dent-A-Med suffered actual damages that were proximately caused by the deception. *Id.* Thus, like the claims for fraud in the prior

bankruptcy action, Dent-A-Med must prove deception, Defendants' intent to deceive, and its own reasonable reliance on the deception.

The Court agrees with Defendants that Dent-A-Med is precluded from relitigating key issues in this case, namely certain elements of its fraud claims. After presiding over a trial with witnesses, Judge Hollis made several findings of fact and law that were essential to the bankruptcy judgment and that are fatal to Dent-A-Med's current claims. First, "Dent-A-Med was aware that [Dr.] Weiner's offices submitted charges slips for work not yet completed" and provided "no evidence" of work completed negligently or by unlicensed professionals. *In re Fred Weiner*, 2008 WL 2699914, at *3. Second, Dent-A-Med failed to prove "that Weiner, Lifetime Smiles or affiliated offices never intended to complete the work submitted in the charge slips." *Id.* at *6. Even assuming that Dent-A-Med could establish that the Defendants, unlike Dr. Weiner, had the requisite intent, Dent-A-Med is precluded from relitigating whether the pre-billed charge slips constituted deception as well as its own reliance on such deception. Consequently, Defendants are entitled to summary judgment on Counts I and II.

**C. Breach of Contract and Conversion Claims**

***1. Claims against Defendant Daisy Weiner***

Defendants contend that Ms. Weiner is entitled to summary judgment on the remaining claims against her because Judge Hollis found or implied that Ms. Weiner was not a party to the Provider Agreement. Dent-A-Med replies that the issue of Ms. Weiner's contractual liability was not litigated in the bankruptcy case and that Judge Hollis made no finding of fact as to this issue.

The Court agrees with Dent-A-Med that the scope of Ms. Weiner's contractual liability was not at issue before the bankruptcy court. Although Judge Hollis determined that "Dent-A-Med entered into the Provider Agreement with White Oak Dental, P.C., doing business as Lifetime Smiles, Inc.," *id.* at *3, she made no determination about Ms. Weiner's contractual liability. Moreover, the bankruptcy court findings regarding the terms and scope of the contract were not actually litigated, and Judge Hollis made no findings of fact regarding the contract that were essential to her determination regarding the alleged fraud. As a result, Dent-A-Med is not collaterally estopped from pursuing its contractual claims against Ms. Weiner. *See Klingman*, 831 F.2d 1294.

The Court notes, however, that based on the evidence before the Court at this time, it appears that Ms. Weiner signed the Provider Agreement on behalf of Lifetime Smiles and not as a

party to the contract, and she may be entitled to summary judgment on the remaining claims against her. This issue, however, was not fully briefed. Consequently, the Court denies the motion for summary judgment as to Ms. Weiner on Counts III and IV.

### *2. Breach of Contract Claims*

Finally, Defendants argue that they are entitled to summary judgment on Counts III and IV because Judge Hollis found that Defendants did not breach the Provider Agreement. The Court summarily rejects this argument.

As a preliminary matter, as discussed above, the doctrine of collateral estoppel is inappropriate because neither the breach of contract issue nor the conversion issue was litigated in the bankruptcy case. Rather, Judge Hollis only found that Dent-A-Med failed to establish fraud. Furthermore, even a cursory reading of the bankruptcy opinion supports the Court's decision that Defendants' argument must be rejected. In *dicta*, Judge Hollis repeatedly left open the possibility that Dent-A-Med may have a claim for breach of contract. *See In re Fred Weiner*, 2008 WL 2699914, at *2 ("Under its contract with the Weiner affiliated companies, Dent-A-Med may have a right to reimbursement . . . [and] the court simply cannot transform total potential contract damages into total fraud damages"); *5 (Dent-A-Med "asserts nothing more than a breach of contract"); *6 (Dr. "Weiner's

suspension certainly was an intervening factor that could have curtailed the ability to finish" performance of the contract). The Court agrees with Judge Hollis that questions of material fact exist as to whether Defendants breached the Provider Agreement with Dent-A-Med, thus it rejects the motion for summary judgment on these counts.

### IV. CONCLUSION

For the reasons stated herein, Defendants' Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**. **IT IS SO ORDERED.**

　　　　　　　　　　　　　　　　　　　　　　　　　Harry D. Leinenweber, Judge
　　　　　　　　　　　　　　　　　　　　　　　　　United States District Court

Dated: 12/29/2008